#### IN THE

# *Supreme Court of Errors*

#### OF THE

## STATE OF CONNECTICUT,

#### IN JUNE TERM, 1815.

—————— :::::: ✹ :::::: ——————

### Fox *against* HILLS.

THIS was an action of ejectment. The cause was tried at *Hartford, September* term, 1814, before *Swift, Brainard* and *Baldwin,* Js.

On the trial, the plaintiff claimed title to the land in question by virtue of the levy of two executions issued on judgments recovered by the plaintiff against the defendant, in actions of trespass *vi et armis.* The defendant relied, first, on a deed from himself to *Noble Hills,* his son. It appeared, that this grantee was a minor about sixteen years of age, put out as an apprentice, destitute of property; that no consideration had been paid for the deed; and that the plaintiff's causes of action existed before, but went into judgment after, the conveyance. The plaintiff contended, that the deed was fraudulent and void as to him, it having been made to avoid his claims. The defendant contended, that the deed was good as against those claims, because they

A voluntary conveyance to defeat the claim of a third person for damages arising from a tort, though not within our statute against fraudulent conveyances, is void at common law.

The appointment of an appraiser of land taken in execution is not a judicial, but a ministerial act; and if such appraiser be not indifferent, the fact may be shewn to impeach a title under the levy.

An appraiser who is nephew by marriage to one of the parties is not " indifferent" within the meaning of the statute.

were not of the nature of a debt or duty, but founded on a tort. Secondly, the defendant contended, that the levy of one of the executions was void, because one of the appraisers was not an indifferent freeholder, being nephew by marriage to the plaintiff. It appeared that the appraiser in question was appointed by a justice of the peace, without the procurement of the plaintiff; and on that ground, the plaintiff insisted, that he must be considered as an indifferent freeholder. The court charged the jury, on the first point, that the deed, though voluntary, and without consideration, was not fraudulent and void as against the plaintiff's claims, because they were founded on a tort ; and on the other point, that the appraiser was not an indifferent freeholder as by law is required. They, therefore, directed the jury to find a verdict for the defendant. The jury having found accordingly, the plaintiff moved for a new trial ; and the questions arising on such motion were reserved for the consideration and advice of the nine Judges.

*Dwight* in support of the motion. 1. The defendant's deed to *Noble Hills* was fraudulent and void as against the plaintiff's claims as being within our statute against fraudulent conveyances(*a*), and by the principles of the common law.

First, this conveyance having been made to avoid " a debt or duty" is both within the letter and spirit of the statute. The term " debt" is not here used in a limited and technical sense, but has a comprehensive import, correspondent with the great object of the statute. At any rate, it cannot be denied that the term " duty" is applicable to this case. The plaintiff had a *right* to reparation for the wrong done him ; of course, there must have been a correspondent *duty* on the part of the defendant to make reparation.

It may aid us in the construction of this statute to compare it with the stat. 13 *Eliz. c. 5.* from which it was derived. The object of both statutes is undoubtedly the same ; and it is evident from inspection that one is a mere *abstract* of the other. In 13 *Vin. Abr. tit.* Fraud (F) *pl. 3.* there is a professed abstract of the *English* statute, which is almost precisely the same as our statute. The irresistible inference is, that our ancestors and that writer drew from a common

(*a*) *Tit.* 76.

source. Besides, it has always been understood by lawyers in this state, that our statute was taken from the 13 *Eliz.* This was the result of the investigations of the committee under whose superintendence the present edition of our statute-book was published. See the note at the end of the statute in question, *p.* 355. Now, there cannot be a doubt whether the provisions of the stat. 13 *Eliz.* extend to this case. By that statute it is declared and enacted, " that all and every feoffment, gift, grant, alienation, bargain and conveyance of lands, &c. had or made, to the end, purpose and intent to delay, hinder or defraud creditors *and others* of their just and lawful *actions, suits,* debts, accounts, *damages,* penalties, forfeitures, &c. not only to the let or hinderance *of the due course and execution of the law,* but also to the overthrow of all true and plain dealing, &c. shall be deemed and taken (only as against that person or persons, his or their heirs, &c. whose *actions, suits,* debts, accounts, *damages,* penalties, forfeitures, &c. by such guileful, covinous or fraudulent devices and practices as is aforesaid, are, shall or might be disturbed, hindered, delayed or defrauded) to be clearly and utterly void, frustrate, and of none effect." Some of the terms here used are appropriately adapted to the case of a just claim for damages in consequence of a tort. It is, therefore, not to be expected, that since the time of Queen *Elizabeth,* the question now under discussion should often arise in the *English* courts. In one case, however, it has been determined, that a conveyance to trustees in trust for *bona fide* creditors would not protect the surplus beyond the amount due to such creditors, from a claim founded in damages for a tort. *Lewkner* v. *Freeman, Prec. Chan.* 105, 6.

Secondly, this conveyance was void at common law. It has been repeatedly said by the ablest judges, that the statute 13 *Eliz.* was declaratory of the common law. In support of this opinion, Lord *Coke* has laid much stress upon the word " declare" in the statute. 3 *Co.* 83. *b. Co. Litt.* 76. *a.* 290. *b.* And Lord *Kenyon,* commenting upon a different statute, has observed, that the word " declare" is always inserted in acts of Parliament with great caution, and imports an affirmance of the common law. 3 *Term Rep.* 546. Lord *Mansfield,* looking only at the principles of the common law, is of opinion that they are so strong against fraud in every shape, that they would have attained every end pro-

posed by the statutes 13 *Eliz. c.* 5. and 27 *Eliz. c.* 4. *Cowp.* 434. Certain it is, that conveyances made without consideration to defeat the rights of third persons, were held to be void as against such third persons, before the statutes of *Elizabeth. Dyer,* 294. *b.* 295. *a.* From the facts which appear in this case, it is apparent that the conveyance was made with *a fraudulent intent.* If this was not a conceded point, it ought to have been submitted to the jury whether a fraudulent intent were not proved.

2. The levy of the execution was good. The appraiser in question was not selected by either of the parties, but was appointed by the justice, who was authorized by the statute(*a*) to act as a judge in relation to such appointment. It is now to be presumed, that the justice conformed to the directions of the statute ; and that the appraiser had the qualifications which the statute requires. The marginal abstract in *Tweedy* v. *Picket,* 1 *Day's Ca.* 109. is incorrect ; the court of errors having affirmed the judgment of the superior court solely on the second point.

*Bristol* contra. 1. The conveyance was valid as against the plaintiff's claim. Our statute relates only to fraudulent and deceitful conveyances made to avoid " a debt or duty ;" and from the proviso or saving at the close of the 2nd section, it appears that the debt or duty must be due to " a creditor." The plaintiff's claim was in no sense a debt. Nor was any duty due to him as a creditor. His right was not ascertained ; and it was matter of contingency whether it ever would be. It may be admitted, that this case would come within the statute 13 *Elizabeth.* But there is a great difference between the provisions of that statute and ours ; and the difference in language imports a difference in the intention of the legislature. Our statute bears more resemblance to some of the earlier *English* statutes against fraudulent conveyances, as 50 *Edw.* 3. *c.* 6. and 3 *Hen.* 7. *c.* 4. But in *Pauncefoot* v. *Blunt,* cited 3 *Co.* 82. *a.* where *Pauncefoot* being indicted for recusancy for not coming to divine service, made a gift of all his goods and leases to defeat the Queen of her forfeiture, then fled beyond sea, and was afterwards outlawed on the indictment, these early statutes were distinguished from the 13 *Eliz.,* and the case was held not to be

(*a*) *Tit.* 63. *c.* 1. *s.* 7.

*New-Haven*, June, 1815.

Fox
*v.*
Hills.

within the former, though within the latter, as " this act" (says the report, referring to 13 *Eliz. c.* 5.) " doth extend not only to creditors, but to all others who had cause of action, or suit, or any penalty or forfeiture."

Nor was this conveyance void at common law. First, because there was no subsisting debt at the time of the conveyance. *Upton* v. *Basset, Cro. Eliz.* 445. 3 *Co.* 83. *a.* 13 *Vin. Abr. tit.* Fraud (E) *pl.* 1. Secondly, because it does not appear that the conveyance was made with a *fraudulent intent.* It was indeed made under circumstances which might furnish evidence of fraud to the jury ; and at the trial, the plaintiff *contended* that it was fraudulent as to him, it having been made to avoid his claims, but the *case* states no fraudulent intent. The conveyance certainly *might* have been made under those circumstances with the most perfect good faith. Fraud is not to be intended unless it be expressly found. *Ridler* v. *Punter, Cro. Eliz.* 291, 2. Sir *Ralph Bovy's* case, 1 *Vent.* 194. *Doe* v. *Routledge, Cowp.* 710. *Stevens* v. *Olive & al.* 2 *Bro. Ch. Ca.* 90.

2. As to the levy of the execution, the case of *Tweedy* v. *Picket,* 1 *Day's Ca.* 109. is in point to shew that it was void. The judges who tried the cause on the circuit considered that case as an authority. But if the question had not been settled, still it ought to be so decided. The statute requires the appraisers to be indifferent freeholders. If they are not, the levy is irregular, and the title is defective. There is no pretence for saying that the selection of an appraiser by a justice is a judicial act which cannot be enquired into.

Swift, Ch. J. This is an action of ejectment ; and the plaintiff claims title by the levy of two executions against the defendant. The defendant says he had previously conveyed to his son. This conveyance was conceded at the trial to be voluntary, with intent to defeat the plaintiff's claim. His claim was founded on a tort ; and the question is, whether the deed is void as it respects such claim.

The statute against fraudulent conveyances makes void all fradulent conveyances to avoid the debt or duty of others. I am of opinion that this statute does not comprehend claims founded on torts. We must construe statutes according to the common and obvious meaning of the language made use of. In common speech, a debt or duty is never applied to a

mere legal liability to an action for a tort, in which the party may be subjected to pay damages, to be ascertained by the verdict of a jury. To say this would be to confound the well known distinction between debts and torts. Another part of the statute confines its operation to cases where there was a design to defeat a creditor of his just dues; which clearly shews the intent of the legislature to extend it to debts only, and not torts.

But all deceitful practices in defrauding, or endeavouring to defraud another of his known right, by means of some artful device, contrary to the plain rules of common honesty, are condemned by the common law. *Co. Litt.* 3. *b.* So by the principles of the common law, if a man have a right and title to a thing, or just debt owing to him, he may avoid any fraudulent conveyance to defeat him of that right. 3 *Co.* 83. Here are principles broad enough to embrace the case under consideration. This was a voluntary conveyance with intent to defeat the plaintiff of a right to recover damages for a tort. And it is not only reasonable, but necessary, that such conveyance should be rendered void as against such claim; for otherwise a man may do to another the greatest injury, and then, by a fraudulent conveyance, defeat his right to obtain satisfaction for the damages out of his estate. I am, therefore, of opinion, that the voluntary deed of the defendant to his son is void at common law, as it regards the claim of the plaintiff.

It appears that on the levy of one of the executions by which the plaintiff claims, one of the appraisers appointed by a justice of the peace was a nephew by marriage to the plaintiff. I am of opinion, that the levy of this execution is void. The statute requires, that lands taken by execution shall be appraised by three indifferent freeholders of the town where the lands lie, one to be chosen by the debtor, and one by the creditor; and if they cannot agree on a third, or either party neglect to choose, then the next assistant or justice of the peace who by law can judge between the parties shall make the appointment. It has been insisted, that the appointment of an appraiser by a justice of the peace is a judicial act, which cannot be enquired into, and is conclusive on the parties. But in such case the justice of the peace acts in a *ministerial* capacity. He is bound to appoint an indifferent freeholder of the town where the lands lie. If he acts otherwise, he transcends

*New-Haven,*
June, 1815.

Fox
*v.*
Hills.

his jurisdiction, and his acts are void. And it is of essential importance to give this construction to the statute ; otherwise a justice of the peace might appoint a father, son or brother of the parties, and the grossest partiality and fraud could be practised without redress.

The legislature, in directing that the appraisers should be indifferent, must have intended that there should not be such a relation between them and the parties as could bias their minds, and induce them to act with partiality. As the degree of relationship is not designated, it is reasonable to adopt the rule presented by statute(*a*) as to the cases in which judges are disqualified to judge between parties. As this comprehends the relationship of the appraiser, I think the execution has not been duly levied, and the plaintiff acquired no title by it.

In this opinion TRUMBULL, BRAINARD and GODDARD, Js. concurred on all the points.

EDMOND, J. was of opinion that the conveyance was void within our statute, as well as at common law. He thought the levy of the execution good.

SMITH, J. was of opinion that a voluntary conveyance *with intent* to defeat a claim for damages arising from a tort was void, both by our statute, and at common law ; but without *a fraudulent intent* it would not be.

As to the other point, he considered it to have been settled in *Tweedy* v. *Picket* contrary to the marginal abstract of that case. *Tweedy* brought ejectment, claiming under the levy of an execution. On the trial, the validity of the levy was contested. The defendant offered to prove, that one of the appraisers appointed by a justice was uncle to the plaintiff's wife. This evidence the plaintiff objected to ; but the court admitted it. The jury found a special verdict, from which it did not appear that any oath was administered to the appraisers. On account of this defect, the superior court gave judgment for the defendant ; and the court of errors affirmed that judgment on the same ground ; but they were almost unanimously of opinion, that the appointment by the justice was conclusive. As it was not the practice of

(*a*) *Tit.* 95. *c.* 1. *s.* 11.

*New-Haven,*
June, 1815.

Fox
*v.*
Hills.

the court at that time to give the reasons of their decisions in cases of affirmance, it was natural enough for the reporter, looking only at the record, to suppose that the judgment of the court below was affirmed on both points ; but that was not the fact. Had there been no other defect than what related to the appointment of the appraiser, the judgment would have been the other way. And there is some reason for such a decision. The statute, in the first place, declares that whenever an execution shall be levied upon lands, the same shall be appraised by three indifferent freeholders of the town where such lands lie. It then provides for their choice by the parties, if they can agree. If the parties choose two, and cannot agree upon a third ; or if either party neglect to choose ; the statute empowers the next assistant or justice of the peace, *who by law may judge between the parties* in civil causes, to appoint one or more, as the case may require. The legislature evidently consider the appointment as a judicial act ; and require the justice who is to exercise it to be one " who may by law *judge* between the parties." Besides, the act is in its nature judicial. The statute has left the question of indifferency entirely to his judgment. Then, if the appointment is a judicial act, it is conceded that it must be conclusive.

BALDWIN, and INGERSOLL, Js. thought the conveyance void by our statute. On the other points they concurred with the Chief Justice.

HOSMER, J. The voluntary deed given by the defendant to his minor son *Noble Hills, to prevent the plaintiff from obtaining satisfaction for a tort,* is, in my opinion, fraudulent at common law, and of consequence void. It is fraudulent in fact, made under the influence of corrupt motives, and *with intent* to defraud. " The common law doth so abhor fraud and covin, that all acts, judicial as well as others, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful ; *quod alias bonum et justum est,* si per vim vel fraudem petatur, malum et injustum efficitur." *Fermor's* case, 3 *Co.* 78. *a.*

It can hardly be necessary to cite many of the numerous decisions, which illustrate and confirm the principle before stated.

*New-Haven,*
June, 1815.

Fox
*v.*
Hills.

A fine accompanied by all the requisites to give validity to that species of conveyance, *if levied by covin to bar a person of his inheritance,* has been adjudged fraudulent and of no effect. *Fermor's* case, 3 *Co.* 77. *a.*

If land be aliened pending a writ of debt *to avoid the extent thereof for the debt,* the deed is void. 1 *Roll. Abr.* 549.

So a feoffment to the son of a feoffor a few days precedent to the commission of treason, *to secure it from forfeiture,* is of no avail. 2 *Roll. Abr.* 34.

Conveyances *to defeat a forfeiture,* the grantor having been indicted for recusancy, (3 *Co.* 82. *a.*) *to defraud the lord of his heriot,* (*Dyer* 351. *B.*) *to frustrate a sequestration or execution,* (*Cowp.* 434.) have been adjudged to be void, " *because the purpose is iniquitous.*" A bill of sale of goods and chattels made by the owner of them when in *Newgate* for robbery, was held fraudulent and void, for it could not be intended to any other purpose *than to prevent* " *a forfeiture,* and defraud the King." *Skin.* 357.

In *Sands* and others v. *Codwise* and others, 4 *Johns.* 596. the principle advanced was explicitly recognized; and indeed, it is not susceptible of dispute.

Although I have no doubt that the deed to *Noble Hills* is void at common law, I cannot admit that it is opposed to the statute against fraudulent conveyances. *That* act, in my opinion, is *limited solely to the protection of creditors.* It provides " that all fraudulent and deceitful conveyances of lands, &c. made to avoid *any debt or duty of others,* shall (as against the party or parties only, whose *debt or duty* is so endeavoured to be avoided, their heirs, executors, or assigns) be utterly void, any pretence or feigned consideration notwithstanding."

The standard by which language is to be construed is *usage*; " *usus est jus et norma loquendi.*" " Words" (says Sir *William Blackstone*) " are to be understood in their *usual and most proper signification*; not so much regarding the propriety of grammar, as their general and popular use." 1 *Bl. Comm.* 60.

What then is the usual and popular signification of the words, *debt or duty?* I answer, that *debt,* denotes a sum of money arising out of a contract express or implied; never is it confounded with tort or wrong.

The word *duty,* in the common use of language, when

applied to pecuniary obligations, is synonymous with debt. It has not the signification of trespass, tort or damage. In the statute, it is not contra-distinguished from debt, but merely presents the same idea by another term of equivalent meaning, that it may be the more intelligible. The word " duty" obviously must be construed with some limitation ; otherwise it will include the natural, moral, and social obligations, for which no one will contend. So usual is it to understand it as commensurate with *debt*, that the pecuniary demands of government for the most part receive that appellation.

The second paragraph, or penal part of the act, must be considered as co-extensive with the first or directory clause on which my observations have hitherto been made. This provides, that if the fraudulent conveyance shall be justified as having been fairly executed, the parties shall be subjected to certain forfeitures, except it appear by two sufficient witnesses, " that the contract or bargain was made *bona fide,* and on good consideration, before any seizure made by *the creditor* or officer of the estate so conveyed, and that it was without any design of fraud to defeat *the creditor* of his just dues."

Penal laws must be construed strictly. The word " *creditor*" in the last branch of the statute, under the protection of this rule, cannot be extended beyond its plain and popular meaning. And yet, it must be admitted, that both paragraphs of the law are co-extensive, and levelled at the same description of persons, unless this absurdity be sanctioned, that the prohibitory part of it is broader than the penal.

It is an undisputed principle, that statutes against fraud when they act upon the offence, should be liberally and beneficially expounded. 1 *Bl. Comm.* 88. In general, this is accomplished, by giving to the expressions used the most comprehensive sense, which the popular signification of the language authorises. But the rule can never justify the ascribing new and unheard of meanings to words ; nor a departure from the known signification of unambiguous terms. Such, in my opinion, would be the considering *Fox* a creditor, and the tort by which he was injured a debt, because on the procurement of a judgment at some day posterior to the deed, this state of facts might exist. Notwithstanding this, it is contended, that although *Fox* was not a

*New-Haven,*
June, 1815.

Fox
*v.*
Hills.

creditor *at the date* of the deed, yet, as he might become one, if he should chance *to obtain a judgment against* Hills before *his death,* he is, by a species of figure, to be deemed such, at the sealing and delivery of it.

This figurative construction of plain expressions ; this mode of argumentation, which banishes from sight the popular signification of language, and wholly subverts the most established rules of exposition ; which considers as in being what clearly is not ; which converts a possibility into a certainty, and gives it an anticipated existence ; which makes a creditor of a person who has neither debtor nor debt, and transmutes a tort into a contract because it may eventuate in one, I cannot possibly admit. *If* Fox *was a creditor when the deed was executed, he has right to that description, and the benefits of it ; but if he was not, he has no claim to either.*

The construction contended for is founded on a future judgment, *which may never be obtained.* The tort-feasor *may die,* and the personal wrong die with the person. What in the mean time is the condition of the deed ? Is it valid, or is it void ? If valid, it can never be avoided by matter *ex post facto ;* if void, it must be on the ground, that the statute operates against the tort-feasor, and in favour of the person trespassed on. This is a principle, in my judgment, wholly inadmissible. In short, if the argument I am opposing were just, it would follow of course, that all persons trespassed on, whether in body or property, are embraced by the word *creditors,* and every species of injury by the term *debt.* This principle, at least, has the merit of novelty, and if applied to statutes and contracts, would make law which the legislature never thought of, and agreements which never entered into the imagination of the parties.

If the words " debt or duty" are considered without reference to a judgment that may be obtained, the construction which makes them equivalent with " tort or wrong," is more palpably indefensible. By this construction, instead of giving to terms their known and popular acceptation, they are expunged from the law, and words of different meaning inserted, on the supposition that the legislative intent requires this transmutation. But the enquiry forcibly occurs, how do you know this to be *the intention* of the legislature ? The statute declares no intention, except that which its expressions plainly evince. Is the intent to be attained,

*New-Haven,*
*June, 1815.*

Fox
*v.*
Hills.

by annihilating the terms which communicate it, and substituting words of different signification? To understand the *thing signified,* is the *sign* to be effaced? In short, the argument I am opposing, is in subversion of the rule of construction, which requires the statute to be understood according to the popular meaning of its expressions, and by considerations subtle and refined, embraces a meaning figurative, or at least, unusual, to effectuate an intention of the legislature, which cannot be collected from the law.

Some stress has been laid on an expression in 13 *Vin. Abr.* p. 519. that the statute of *Elizabeth* annulled as fraudulent deeds made *to avoid the debt or duty of others.* Now, that statute, it is said, invalidates all fraudulent feoffments, conveyances, &c. executed *with intent,* not merely *to nullify a debt,* but *to frustrate a forfeiture, or damages for a trespass.* Hence, it is inferred, that by the expression " *debt or duty*" that author included *torts ;* and thus there is an example furnished for the construction of our statute.

The answer is not difficult. If *Viner,* or any author cited by him, has used *words* so contrary to general usage, as the above argument supposes, he shews himself unacquainted with the force of language, and is not a pattern for imitation, but a beacon to deter. At the same time, I am far from imputing to him the imagined error. Whatever may be the construction of the 13 *Eliz. c. 5.* the elementary authors have generally considered it as levelled at frauds for the avoidance of *debts ;* and it is not extraordinary, that under this impression, *Viner* should have expressed himself in the manner above stated.

The argument, however, most insisted on, is, that the statute of *Elizabeth* invalidates fraudulent conveyances, not only in favour of creditors, but of persons whose demands are founded in tort, and that this conclusively establishes the construction of our statute. To render this reasoning of any avail, it must be made to appear, that *the statutes referred to are co-extensive.* The obvious mode of doing this, is to shew, that the laws are expressed in terms identically, or constructively, the same. *Most clearly they are not.* The expressions of our statute have already been given. The act of *Elizabeth,* made " for the avoiding fraudulent feoffments, &c. contrived to hinder and *delay creditors and others,* of their just and lawful actions, debts, accounts, *damages,*

*New-Haven,*
June, 1815.

Fox
*v.*
Hills.

*penalties, forfeitures,* &c., enacts, that all such acts be deemed as against the *person or persons,* &c. injured utterly void." Those for the protection of whom this law was made, were not merely creditors but " *others,*" who should be delayed or hindered, not only in their debts, but their " *damages.*" *Pauncefoot* v. *Blunt,* 3 *Co.* 82. What stress is put by the expounders of the *English* statute, on words contained in that act, *which are not in ours,* may be seen by recurrence to *Taylor* v. *Jones,* 2 *Atk.* 600. " The word *others*" (says the master of the rolls) " seems *to be inserted to take in all manner of persons,* as well creditors after as before the settlement, whose debts should be defrauded. In the enacting clause the language is still stronger, because the word *creditors* is not mentioned, but general words *person* or *persons,* &c." The difference of phraseology in the two statutes conclusively shews, that they cannot receive the same construction. " For as in a formal instrument the same words must be taken to import the same signification throughout, so in such instruments, a different penning must be taken to import a different meaning or signification." 1 *Pow. on Cont.* vii. This is equally true when affirmed of statutes, whether the words are to be found in one or in several, and " all our conclusions upon the import of words, expressing different ideas, must be established on its basis."

As a legislator I might consider it expedient to enact the matter now endeavoured to be assumed by construction ; but I cannot believe, that the judiciary may overleap the authority delegated in terms clear and unambiguous, on reasons which, in my judgment, do not fall within their province.

With respect to the levy of the execution, I am of opinion, that it is not pursuant to law. *The appraiser was nephew to the creditor.*

With reason it may be presumed, that the near connexion of a person will be under the influence of partiality ; and hence the wisdom of the law, in requiring the appointment of an " indifferent" appraiser. The meaning of the term " indifferent" cannot be mistaken. Its popular and legal signification are precisely the same. The person of whom " indifference" is predicated, must be impartial, and free from bias. This cannot, in general, be affirmed of the father, the brother, or the nephew of a person, whether by nature or marriage. Neither of these relatives are presumed to be

*indifferent* to his interest. For this reason it is, that the common law repels a juror, if he is of kin to either party, either by consanguinity or affinity. " The triers," (says Sir *William Blackstone* in 3 *Comm.* 363.) " in case the first man called be challenged, are two indifferent persons named by the court, and if they try one man and find him *indifferent*, he shall be sworn." But if the person tried is within the ninth degree of kindred, he is *not indifferent. Co. Litt.* 158. *a. Trials per Pais* 138.

To obviate the force of this objection to the appraiser, it has been argued, that his appointment by a justice of the peace was a *judicial* act, and absolutely conclusive. I cannot admit that the act was judicial, or if it was, that it had any legal effect.

Whether it was judicial must depend on the nature of the transaction, and the words of the statute concerning the levy of executions.

The nature of the act is not judicial. Undoubtedly, it required the exercise of choice and discretion ; and so does the taking of bail by the sheriff, and many other proceedings, which confessedly are ministerial.

The judges of the supreme court of the *United States* declined, *as a court,* to make the requisite enquiries under the law " to regulate the claim to invalidate pensions," because the duty was *not judicial.* It was the proceeding of commissioners. 2 *Dall.* 410. *et seq. in notis.*

To draw the precise line between judicial and ministerial power, in this case, is not necessary. As the justice was not constituted judge, to administer between parties in the forms of law, *the act* performed by him, *in its nature,* is not distinguishable from the appointment of an overseer by selectmen, and other similar doings, which have never been considered as judicial.

As to the *words* of the statute, it provides, that if the parties cannot, or do not, agree in choosing a third appraiser, the officer shall apply to the next assistant or justice of the peace, " who by law may judge between the parties in civil causes," to make the appointment. It is contended, that the expression just recited indicates, that the justice is to act as judge. I am not of that opinion. The phrase, " who may judge between the parties in civil causes" is, merely, a *designatio personæ to secure impartiality,* and equally proper,

whether the authority to be exercised by the justice, be ministerial or judicial.

The object of the clause was not to communicate authority, but that is the subject of the sentence immediately succeeding.

But, let it be admitted, that the justice acted judicially; he has overleaped his jurisdiction, and his proceeding is void. 3 *Cranch* 331.

Had the appointment been of an alien, a female, or a slave to the creditor, it would have been invalid, because they are legally ineligible. Equally so is the nephew of the creditor. The statute alone authorizes the appointment of an *indifferent* freeholder. *Indifference* is an indispensable *adjunct*, and must exist, or the appointment is extrajudicial. 1 *Day's Ca.* 53. *in notis.*

If the question under discussion were doubtful, this is the better construction of the act. The adoption of a principle which would sanction the conclusive appointment of a father, son, or brother of the creditor, to appraise land on execution, is too objectionable to be admitted, unless warranted by the most unequivocal expression.

> New trial to be granted as to that part of the demanded premises on which an execution has been duly levied.