SCOTT *vs.* HARTMAN and others.

1. An action for damages for a tort, is within the meaning of the act to protect " creditors *and others* " against conveyances made to defraud them of their just and lawful actions, damages, &c., (*Nix. Dig.* 355). And a conveyance made with intent to defeat the recovery, by a third person, of damages in such action, is void.

2. But, upon a bill to restrain the grantee in such conveyance from selling, conveying or encumbering the property so conveyed to him, and injunction thereon, the answer thereto insisting that the conveyance was not voluntary, but made on sufficient consideration, and without knowledge by the grantee of such claim against the grantor, until some time after the suit for damages, the question of fraud not being entirely free from doubt, the injunction was retained till the hearing.

3. A debtor, in failing circumstances, will not be permitted to sell his land, convey it by deed without reservation, and yet secretly reserve to himself the right to possess and enjoy it, though for a limited time only, for his own benefit. The rule will not be changed by the fact that the right thus to occupy the property is a part of the consideration of the sale.

---

On bill and answer, and affidavits annexed. Motion to dissolve injunction.

*Mr. S. H. Grey,* for the motion.

*Mr. F. F. Westcott,* contra.

THE CHANCELLOR.

The defendants, Matthias and Andrew M. Hartman, move to dissolve the injunction issued in this cause, restraining them from selling, conveying away or encumbering certain land in Cumberland county, conveyed to them by their father, the defendant William Hartman, and from cutting timber or quarrying stone upon the property. The case made by the bill is this: William Hartman and the complainant, in 1871, had divers disputes in regard to the pos-

session of certain land, which eventuated in a suit for forcible entry and detainer by the latter against the former, in which the latter was successful ; a counter suit for trespass, brought by the former against the latter, in which Hartman was non-suited, and an action of trespass brought by the complainant against Hartman, in the Cumberland Circuit Court, on the 18th of October, 1872, which resulted in a judgment for the plaintiff for $627.50 damages, and $52.29 costs, at the May Term, 1873, of that court. On this judgment a writ of *fieri facias de bonis et terris* was issued in May, 1873, under which the sheriff sold the land in question in this suit to the complainant, as the property of William Hartman. Before the commencement of the last mentioned suit, and on the 21st of September, 1872, William Hartman conveyed to his two sons, the defendants, Matthias and Andrew M., who were both unmarried and then resided with him on part of the above mentioned premises, the whole of that property. To the former he conveyed a tract of one hundred and seventeen and eighty one-hundredths acres, the property on which he resided, for the consideration, as expressed in the deed, of $3800. To Andrew he conveyed the rest of the premises, which appears to have consisted of an undivided fourth of two tracts, containing together fifty-six acres, for the consideration, as expressed in the deed, of $200.

The bill is filed to set aside these deeds as fraudulent as against the complainant. The defendants' counsel urges that, at the time of the conveyances to Matthias and Andrew, the complainant was not a creditor of their father, and that he did not become so until the recovery of the judgment. The litigation between the parties appears to have begun in 1871. The suit in which the *fieri facias de bonis et terris* was issued, was not commenced, however, until October 18th, 1872. The complainant's action at law, although in *maleficio*, is within the meaning of the statute which protects " creditors *and others* " against conveyances made to defraud them of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures and demands. *Nix. Dig.* 355 ; *Jackson* v. *Myers*, 18

*Johns.* 425 ; *Leukener* v. *Freeman, Freem. Ch.* 236 ; *Fox* v. *Hills,* 1 *Conn.* 295 ; *Barling* v. *Bishopp,* 29 *Beav.* 417. The defendants insist that the deeds to Matthias and Andrew were not voluntary, but were made on sufficient valuable consideration, and without knowledge of the complainant's claim, which they say the grantees in those deeds were first informed of about the time, or some time after, the complainant brought his suit therefor, to wit, about the 18th day of October, 1872. It appears, however, that Matthias had been at home for some months before the making of these deeds, and that Andrew was also at home at that time, though the answer does not state how long he had been at home. That these defendants were unaware of the difficulties and litigations which had existed between the complainant and their father seems rather improbable, to say the least of it. And yet it is possible that they may not have been apprised of the intention of the complainant to prosecute their father for the recovery of damages, or that the latter apprehended that any such suit would be brought.

The consideration which Matthias was to pay, appears by the answer, to have consisted of a debt (and interest thereon) due him from his father for work done and money lent him, for which he held his father's note, which he says he delivered up on the delivery of the deed ; cash which he claims to have paid him subsequently in two installments, and debts due from his father to sundry persons, which Matthias subsequently paid, and which, it is alleged, he agreed to pay as part of the consideration of the conveyance. Andrew claims to have paid his father in cash, $138, on account of the consideration of the deed to him, and for the balance, to have delivered up to his father a note which the latter had given him for labor done for him. The deeds were left for record at the county clerk's office by William Hartman ; and when, some time afterwards, the clerk wrote to Matthias, informing him that the deed was not recorded, for want of sufficient stamps, William presented himself at the office in response, and, according to the admission of the answer, paid the money for stamping and recording that deed. He paid for recording

the deed to Andrew. He took both deeds from the clerk's office after they were recorded. It is true the defendants say that in all this he acted merely as the agent of his sons; that he received the deeds from his wife, to whom they had delivered them to be sent to the office to be recorded, and that Matthias furnished the money to pay for the stamps on, and the recording of his deed. By the answers to the interrogatories, it would appear that part of the consideration of the deed to Matthias was, that his father and mother should be permitted to live in the dwelling-house on the premises, but for what period of time is not stated; and that it was part of the consideration of both deeds that the grantors therein should be permitted to occupy the property conveyed. This fact, if it exists, is important in resolving the question as to fraud in these conveyances. In *Lukins* v. *Aird,* 6 *Wall.* 78, it was held that the law will not permit a debtor, in failing circumstances, to sell his land, convey it by deed, without reservations, and yet secretly reserve to himself the right to possess and enjoy it, though for a limited time only, for his own benefit; and that this rule of law will not be changed by the fact that the right thus to occupy the property is a part of the consideration of the sale. See also on this head, *Oriental Bank* v. *Haskins,* 3 *Metc.* 332; *St. John* v. *Camp,* 17 *Conn.* 22. The answer admits that William Hartman has been in possession of the premises conveyed to Matthias and Andrew, ever since the execution of the deeds to them. It further appears by the answer, that no consultation was had with, nor any advice taken of any one in regard to the proposed sale, or as to the conveyance of the property by the father to the sons. The bill alleges that the land conveyed by those deeds was all that William Hartman owned. The answer indeed denies this, and says he had another piece of land, but of how much it consisted, or where, exactly, it is located, or from whom he obtained it, is not stated. The answer simply speaks of it as land on Manaway Branch. The case is one in which justice requires that the injunction be retained until the hearing.

The motion to dissolve will, therefore, be denied, with costs.