13 203
13 228
13 229
13 295
15 241
15 309
17 343
30*1008
20 321
22* 100

13 203
24 235

[No. 853.]

# STATE OF NEVADA, RESPONDENT, v. CALIFORNIA MINING COMPANY ET AL., APPELLANTS.

RULE EIGHT—ARGUMENT OF COUNSEL.—The "argument" mentioned in rule eight of the supreme court refers to an oral argument before the court. Agreeing to waive argument, and taking time to file brief on the merits of the case is the same, in effect, as an oral argument.

TAX SUITS—CONTROL OF BY ATTORNEY-GENERAL—APPEARANCE OF OTHER ATTORNEYS.—The attorney-general has the entire control of all tax suits in the supreme court, on the part of the state. Other attorneys may appear by consent of the attorney-general, but not otherwise. If nothing to the contrary is shown, the court will always presume that an attorney appearing for the state in such suits is authorized by the attorney-general to act in the case.

UNDERTAKING ON APPEAL—SUFFICIENCY OF.—An undertaking which complies with section three hundred and forty-two of the civil practice act (1 Comp. Laws, 1403), for the stay of execution, with the exception of binding the sureties to pay in gold coin: *Held*, to be a sufficient undertaking on appeal, as required by section three hundred and forty-one (1 Comp. Laws, 1402), for the payment "of all damages and costs" awarded on appeal.

IDEM—EXECUTED ON SUNDAY.—An undertaking on appeal executed on Sunday is valid. The execution of such a bond is not "transacting judicial business," and is not prohibited by the statute. (1 Comp. Laws, 4.)

TAX ON PROCEEDS OF MINES—COLLECTED QUARTERLY.—In construing section ten of the act providing for the taxation of the net proceeds of mines (2 Comp. Laws, 3254): *Held*, that there is nothing in said section to prevent the collection of such taxes quarterly. (*State* v. *Eureka Con. M. Co.*, 8 Nev. 16, affirmed.)

IDEM—TEN PER CENT. PENALTY.—In construing the various sections of the revenue law relating to the collection of delinquent taxes: *Held*, that the per centum penalty imposed by section twenty-four (2 Comp. Laws, 3148), does not apply to suits brought for the collection of delinquent taxes on the proceeds of mines, and that such percentage is not imposed

or authorized by section one of the act prescribing an additional penalty for non-payment of taxes. (2 Comp. Laws, 3238.) (HAWLEY, C. J., dissenting.)

APPEAL from the District Court of the First Judicial District, Storey County.

*F. V. Drake, Attorney-general* of Storey county, for Respondent (on motion to dismiss appeal).

I. There is no undertaking on appeal as required by section 341 of the code. (*Bank* v. *Judson*, 10 How. Pr. 133; *Halsey* v. *Flint*, 15 Abb. Pr. 367, and note; *Onderdonk* v. *Emmons*, 17 How. Pr. 545; *Wilson* v. *Allen*, 3 How. Pr. 369; *Hoppock* v. *Cottrel*, 13 How. Pr. 461; *Gaudette* v. *Glissan*, 11 Nev. 184; 4 Wait's Pr. 224, 225, 226 *et seq.; Wilson* v. *Holman*, 2 O. R. 254; *Oliver* v. *Pray*, 4 Id. 191; *Langley* v. *Warner*, 1 N. Y. (1 Comstock), 606.) The undertaking fails to specify any kind of money or currency. (1 Comp. Laws, 1403.) Statutory enactments granting rights and means of appeal are strictly construed and enforced. (*Cañon Road Co.* v. *Lawrence*, 3 Or. 519; *Elliott* v. *Chapman*, 15 Cal. 383; *Shaw* v. *Randall*, 15 Id. 386; *Wilson* v. *Holman*, 2 O. R. 254; *Oliver* v. *Pray*, 4 Id. 191; *More* v. *Brown*, 10 Id. 198; *Bradley* v. *Sneath*, 6 Id. 491; *Harding* v. *Owings*, 1 Bibb, 214.) The undertaking was executed on a non-judicial day, and is therefore illegal. (Bouvier Dict. 767 (14th ed. 1873); *Field* v. *Park*, 20 Johns. (N. Y.) 140; Freeman on Judgments, sec. 138; *State* v. *Shuer*, 33 Maine, 539; *Chapman* v. *State*, 5 Blackford, 111; *Storey* v. *Elliott*, 8 Cowen, 27; *Williamson* v. *Roe*, 3 D. & L. 330.)

II. The district attorney is the only person to whom the management and control of this class of suits are entrusted. The court in the exercise of its discretion ought to relieve respondent from the effects of any stipulation not consented to by the district attorney. (*Quinn* v. *Lloyd*, 7 Robt. 538; *People* v. *Mayor*, 11 Abb. Pr. 66; *Coxe* v. *Nicholls*, 2 Yeates, 546; *Harrow* v. *Farrow*, 7 B. Mon. 126; *Banks* v. *Evans*, 18 Miss. 35; *Union Bank* v. *Govan*, 18 Miss. 333; *Kellogg* v. *Gilbert*, 10 Johns. 220; *Crary* v. *Turner*, 6 Johns. 51; *Simonton* v. *Barrell*, 21 Wend. 362; *White* v. *White*, 6 Nev. 20;

*Williams* v. *Keller*, 6 Nev. 141; *McWilliams* v. *Herschman*, 5 Nev. 265. The filing of an undertaking on appeal is necessary to confer jurisdiction. The agreement of parties cannot give the court jurisdiction: *Mygatt* v. *Ingham*, Wright, 176; *Bradley* v. *Sneath*, 6 Ohio, 491; *Bayless* v. *Belmont Bank*, 15 Ohio, 619; *Farrand* v. *Bentley*, 6 Mich. 281; *Farchild* v. *Daten*, 38 Cal. 286; *Phillips* v. *Welch*, 11 Nev. 187; *Stamps* v. *Newton*, 3 How. [Miss.] 34.)

*C. J. Hillyer*, for Appellant (on the merits).

By the act of 1871, the collection of taxes on the proceeds of the mines must be enforced in the same manner as the taxes upon other personal property. (Stat. of 1871, p. 90, sec. 10.) The judgment is erroneous in including the ten per cent. penalty in addition to the penalty of twenty-five per cent. In the original revenue act of 1864–5, and the amendments thereto, previous to 1871, the intention is apparent to provide a complete and distinct system of assessing and collecting the tax on the proceeds of the mines. (Comp. Laws. pp. 214 to 221.) In this portion of the act nothing is said of a penalty of ten per cent. The relative order of the several acts to be performed is substantially the same as in the previous portion of the law in respect to other property, and following this order a section in reference to this ten per cent. should have been inserted between sections 12 and 22. Its omission is evidently intentional. The law of 1871 is equally silent in relation to it. In fact, in all the statutes concerning revenue, this ten per cent. penalty is only mentioned or referred to in three places: first, in sec. 24 of the revenue act (Comp. Laws, 188); second, in sec. 30 of same act (Comp. Laws, 191); and third, in the act of 1873 (Comp. Laws, 222). The purpose of the act of 1873 was to impose a penalty of twenty-five per cent. and not this penalty of ten per cent. This is indicated by its title and shown by the language of the enactment. It does not impose or attempt to enforce the ten per cent. penalty. No intention is shown to impose a penalty of ten per cent., nor to recognize this penalty, except so far as theretofore imposed by the revenue laws. It imposes

twenty-five per cent., and leaves the ten per cent. to stand as fixed by previous legislation.

*Lewis & Deal*, for Respondent.

The tax on the proceeds of mines is collectible every quarter. (*State* v. *Eureka Con. M. Co.*, 8 Nev. 15.) The ten per cent. penalty was properly added to the judgment. The intention of the legislature controls even against the express language. (*Rooney* v. *Buckland*, 4 Nev. 45.) The act of 1873, p. 169, clearly imposes it in all cases when suit is brought in the district court. That act certainly applies to all cases where suits are first brought in the district court, and the amount exceeds three hundred dollars. As this act is an independent one, not purporting to amend any particular law, it certainly cannot be said that its language does not embrace suits for the collection of mining taxes as well as any other. If the twenty-five per cent. penalty applies to the mining tax in all suits brought in the district court for taxes, then the ten per cent. is equally to be collected, for the same language which makes the twenty-five per cent. applicable to the mining tax, equally imposes the ten per cent. The clear meaning of the act is that in every suit for taxes, whether the tax be a mining tax or not, there shall be collected a penalty of twenty-five per cent. in addition to the ten per cent. provided by or mentioned in the then existing revenue laws.

By the Court, LEONARD, J.:

This action was commenced in the first judicial district court against the California mining company and the mining claim described in the complaint, to recover a state tax of thirty-three thousand six hundred twenty-four dollars and one cent.; a county tax of fourteen thousand nine hundred forty-four dollars and one cent.; a school tax of five thousand six hundred and four dollars, and a railroad bond tax of eighteen thousand six hundred and eighty dollars and one cent.; amounting in all to the sum of seventy-two thousand eight hundred and fifty-two dollars and three cents, in United States gold coin, alleged to be due from defendants

to plaintiff, under the revenue laws of this state regulating taxation of the proceeds of mines containing precious metals, on account of twenty-nine thousand one hundred and twenty tons of gold and silver-bearing ores assessed at one hundred fifty-five dollars per ton, and extracted from the mine described in the complaint, during the quarter of the year commencing April 1, 1876, and ending June 30, 1876; also the additional sum of seven thousand two hundred and eighty-five dollars and twenty cents, the same being ten per centum of the said tax, alleged to be due as a penalty for non-payment of the tax as required by law; and the further sum of eighteen thousand two hundred and thirteen dollars, the same being an additional penalty of twenty-five per centum of said tax for non-payment of the tax as required by law, making in all the sum of ninety-eight thousand three hundred and fifty dollars and twenty-three cents, besides costs.

Defendants answered to the complaint and, among other things, denied that the tax mentioned in the complaint was delinquent or due at the time the action was commenced, and alleged that the action was prematurely brought. Defendants denied that the levy and assessment of the taxes were legally made; denied that at the commencement of the action, or at any other time, either of the defendants had become liable to pay as taxes the amount specified in the complaint or any other amount, or the sums claimed to be due as penalties or percentage, or any part of said sums.

Plaintiff, by its attorneys, demurred to the answer on the grounds: First, that none of the material allegations of the complaint were denied by the answer; second, that the new matter set up in the answer did not constitute a defense to plaintiff's cause of action, set out in its complaint, either in whole or part; third, that the defense set out in the affirmative matter in the answer constituted no defense to the recovery of the tax under the statute of this state—no such defense being allowed.

The demurrer was sustained, and defendants refusing to amend, judgment was rendered and entered against defendant, the California mining company, for ninety-eight thousand three hundred and fifteen dollars and twenty cents—

the tax and penalties alleged in the complaint to be due; also for four thousand nine hundred and seventy-six dollars and ninety cents, the amount of costs taxed in the case, making in all the sum of one hundred and three thousand two hundred and ninety-two. dollars and ten cents, in United States gold coin. Separate judgment for the same amounts was also rendered and entered against the mine described in the complaint. Defendants appeal from the judgments. The true amount of the tax and penalties claimed was ninety-eight thousand three hundred and fifty dollars and twenty cents, but their amount as stated in the judgments, and for which judgments were rendered, was only ninety-eight thousand three hundred and fifteen dollars and twenty cents. However, the error is in defendants' favor and they cannot complain.

The attorneys of record in the court below were the district attorney of Storey county and Messrs. Lewis & Deal for the state, and Messrs. C. J. Hillyer and R. S. Mesick for the defendants. Judgment was rendered March 15, 1877, and this appeal was taken March 26, 1877. On the first day of the July term of. this court, the cause was set down for argument on the thirty-first day of July, 1877. On the twenty-first day of July, 1877, Messrs. C. J. Hillyer and Lewis & Deal, representing the respective parties, appeared in open court, and consented to dispense with oral argument, and to submit the case on briefs of counsel. It was thereupon ordered, that the case be so submitted; that counsel for appellants should have fifteen days in which to file brief, and counsel for respondent, ten days thereafter to reply.

On the twenty-fifth day of July, 1877, F. V. Drake, Esq., district attorney of Storey county, served upon counsel for appellants a notice "that on the thirty-first day of July, 1877, at ten o'clock A. M., and before the hearing of said appeal, the respondent, by its attorneys, would move the court to dismiss this appeal with costs, on the ground that the appellants had failed and neglected to file an undertaking on appeal in said cause, as by law required."

On the thirty-first day of July, 1877, at the time and

place stated in the notice, the district attorney appeared in court and argued his motion to dismiss the appeal. The attorney-general has not at any time appeared in person in this court, nor has he, in person, taken part in any of the proceedings affecting this case. The consent to submit the case on its merits upon briefs to be filed, was given by Messrs. Lewis & Deal on one side, and C. J. Hillyer on the other; and the motion to dismiss the appeal was argued, and the written notice thereof signed, by the district attorney alone. At the argument of the motion to dismiss, neither of the attorneys for appellants was present in court, and no notice is taken of the motion in their brief. In accordance with the order of the court, Messrs. C. J. Hillyer, for appellants, and Lewis & Deal, for respondent, filed briefs upon the merits of the case. And although we intend to decide the motion to dismiss upon its merits, because of an apparent misunderstanding between counsel for respondent, still, it seems proper to consider it in the light of the facts, in connection with rule viii, of this court, which reads as follows:

"Exceptions to the transcript, statement, the undertaking on appeal, notice of appeal, or to its service or proof of service, or any technical objection to the record affecting the right of the appellant to be heard on the points of errors assigned, must be taken at the first term after the transcript is filed, and must be noted in writing, and filed, at least one day before the argument, or they will be disregarded. In such cases, the objection must be presented to the court before the argument on its merits."

The district attorney does not claim that it would be just to appellant to allow counsel for respondent to argue a case on its merits, and thus debar the former of the privilege of correcting the undertaking, and then permit the latter to move a dismissal of an appeal that had been treated as valid by him; nor, as we understand him, does he argue that such practice is permissible under the rule quoted. But he urges that the notice was given and the motion made before the argument on its merits. He claims that the argument was not had upon the merits until the briefs

were filed. If in this case the briefs constituted the entire argument referred to in the rule, it must follow that they are a part of the argument in every case, and consequently that the argument is never concluded until after the briefs are filed. Such is not the case. The "argument" stated in the rule is an oral argument before the court. But it is said by the district attorney that Messrs. Lewis & Deal had no power to submit the case as they did. It must be admitted, however, that they had as much power to do that as the district attorney had to move a dismissal of the appeal. The district attorney had charge of the case in the court below, but the moment it was appealed to this court, the attorney-general alone had control of it. (2 C. L. 2773 *et seq.; People* v. *Pacheco,* 29 Cal. 213.) After the appeal, the district attorney, like any other attorney, may appear in a case wherein the state is a party, and by his act bind the state, if he comes in aid and by consent of the . attorney-general, but not otherwise. Courts always presume, if nothing to the contrary is shown, that counsel who appear are fully empowered to act in the case; but such presumption ceases if a showing is made by the proper party to the contrary. Nothing appearing to the contrary, we therefore conclude that the acts of Messrs. Lewis & Deal, as well as those of the district attorney, were performed by the consent of the attorney-general. If so, agreeing to waive argument before the court, and taking time to file briefs on the merits of the case, was the same in effect as an oral argument. The case was submitted at the time of the consent, and the motion to dismiss the appeal should have been made and noticed before that time. *Lynch* v. *Dunn,* 34 Cal. 518, is not opposed to the view we take. (See, also, *Bryan* v. *Berry,* 8 Cal. 134.) We think the motion to dismiss the appeal must be overruled, but will not rest our decision upon what has been said. We are urged by the district attorney, in an exhaustive and able brief, to grant his motion, on three grounds:

1. It is claimed that there is no undertaking on appeal, as required by sec. 1402, vol. I., C. L.; that the undertaking given was for the purpose of staying execution only, as required by sec. 1403.

2. That the judgment appealed from being for gold coin, the undertaking must·be drawn and payable in the same kind of money; that inasmuch as the undertaking in this case does not specify gold coin, it is void.

3. That the undertaking was executed on Sunday, a non-judicial day, and is therefore illegal as a contract or as a judicial proceeding.

We are not to inquire whether the undertaking is or is not sufficient to stay execution, but whether it is sufficient to perfect the appeal.

After entitling the cause, the undertaking recites the judgment appealed from, the amount of the judgment and costs, the judgment-debtor and creditor, the appeal to this court, and appellants' desire to stay execution and all proceedings pending the appeal. It gives the names, residence and occupation of the sureties, who bind themselves in the sum of two hundred and twenty thousand dollars, that if the said judgment appealed from, or any part thereof, be · affirmed, the appellants shall pay to the plaintiff the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if affirmed only in part, *and also all damages and costs which may be awarded against the appellants upon the appeal, or that they will pay the same,* not exceeding the sum of two hundred and twenty thousand dollars. The undertaking was signed and sealed by the two sureties, and the affidavit required by statute taken, on Sunday before a notary public.

It will be observed that the undertaking complies with the requirements of section 1403, with the exception of binding the sureties, in terms, to pay in gold coin. It will also be noticed that section 1402 does not require an undertaking given to perfect the appeal to be made payable in gold coin; that in section 1402 the only requirement of the sureties is that they bind themselves " to the effect that the appellant will pay all damages and costs which may be awarded against him on the appeal, not exceeding three hundred dollars;" that by section 1403 the sureties are required, before a stay of execution can be had, to bind themselves in double the amount of the judgment, to pay

the amount directed to be paid by this court, "and all damages and costs which shall be awarded against the appellant upon the appeal."

It will be seen that the whole requirement of the first section mentioned is also required by the last; that is to say, in both, the sureties must bind themselves *to pay all damages and costs,* etc. Under the first section, if they so bind themselves, the appeal is perfected. How could it have strengthened the obligation to pay the damages and costs of appeal, if, in the same instrument, the sureties had bound themselves to pay them in the sum of three hundred dollars, and then, second, in the sum of two hundred and nineteen thousand seven hundred dollars, to pay the judgment of this court and all costs and damages? The undertaking is for something like fourteen thousand dollars, more than twice the amount of the judgment and costs, which strongly indicates that the intention of the sureties was, not only to stay execution, but also to perfect the appeal. But whether they unwittingly or intentionally executed the undertaking for the purpose of perfecting the appeal as well as staying execution, the result is, that they accomplished the first, whether they did the last or not. An appeal is taken by filing and serving notice. It is made effectual as an appeal simply, by executing an undertaking in accordance with section 1402. It is made effectual as an appeal, and a stay of execution is obtained, in case of a money judgment, by the execution of an undertaking required by section 1403, and permitted under section 1408. (See *Zoller* v. *McDonald,* 23 Cal. 136; *Dobbins* v. *Dollarhide,* 15 Id. 374; *Curtis* v. *Richards et al.,* 9 Id. 37; *Mokelumne Hill Co.* v. *Woodbury,* 10 Id. 185; *Dore* v. *Covey,* 13 Id. 505; *Mulford* v. *Estudillo,* 17 Id. 618; *Thompson* v. *Blanchard,* 3 Comst. 336; *Doolittle* v. *Dininny,* 31 N. Y. 350; *Seacord* v. *Morgan,* 17 How. Pr. 394; *Newton* v. *Harris,* 8 Barb. 309; *Hyde* v. *Patterson,* 1 Abb. Pr. 250; *McCarty* v. *Beach,* 10 Cal. 461.)

In support of the third ground of objection to the undertaking, it is said that it would have been void under the common law which has been adopted in this state, and that under the statute (C. L. section 3) the transaction of all

judicial business, with certain exceptions not embraced in this case, is prohibited on Sunday; "that judicial business, in its broadest sense, includes all proceedings had in matters which give courts jurisdiction of a case and which are usual in the progress of a cause."

Under the common law no judicial act could be done on Sunday, but as to the making of contracts and the doing of all other acts not of a judicial nature, that law made no distinction between Sunday and a week day. (Vol. 2. Pars. Cont. 757, note (n); vol. 1, Story on Cont., sec. 754; *Strong* v. *Elliott*, 8 Cow. 30; *Kepner* v. *Keefer*, 6 Watts, 231; *Johnson* v. *Day*, 17 Pick. 106; *Bloom* v. *Richards*, 2 Ohio St. 387.)

Courts refused to sustain or enforce contracts admitted by all to secure an immoral end, or such as were based upon immoral considerations; but no court of last resort went so far as to include in that class such as were executed on Sunday, *because* they were made on that day. And since the statute (29 Car. 2) which enacts that "no tradesman, artificer, workman, colorer or other person whatsoever shall do or exercise any worldly labor, business or work of their ordinary calling upon the Lord's day," it is evident that the English courts have considered contracts not prohibited by statute, neither *contra bonos mores* nor otherwise illegal because made on Sunday. (*Bloxsome* v. *Williams*, 3 B. & C. 113.) In Storey on Contracts, vol. 1, at sec. 754, it is said: "In all these cases, however, it must be understood that the act done must come fairly and reasonably within the terms of the statute forbidding it; for, as the common law did not render contracts void because made on Sunday, the case must be brought directly within the prohibition of the act." (See, also, vol. 2, Pars. Cont. 757.)

The prohibitions which our legislature has seen fit to make affecting this case are, that "no judicial business shall be transacted by the court, except deliberations of a jury, who have received a case on a week day, so called, and who may receive further instructions from the court, at their request, or deliver their verdict; nor any civil process be served by any certifying or attesting officer, nor any record made by any legally-appointed or elected officer,

upon the first day of the week, commonly called the Lord's day." (Vol. 1, sec. 4, C. L.)

In our opinion, the execution of the undertaking in question was neither "judicial business transacted by the court" nor judicial business in any proper sense. It is sometimes difficult to discriminate between judicial and ministerial acts, but there is little difficulty in this case. It is not claimed that it was "judicial business transacted by the court," but that it was judicial business because it appertained to court matters, and was an act necessary to be done in order to give jurisdiction to this court, and was a usual proceeding in such cases. If any portion of the acts performed in executing the undertaking was judicial business, the whole was. If the acts of signing and justifying were of that nature, then writing the undertaking was the same; for they were all requisite in the preparation and completion of the instrument. And yet it would hardly be claimed by the district attorney that a preparation of the undertaking by the notary on Sunday, so it could be executed and filed early Monday morning, would be a judicial act because it was in aid of a court proceeding.

How can the preparation and execution of an undertaking to perfect an appeal and stay execution be judicial business any more than the collecting of money to deposit in lieu of the undertaking? One appellant executes a bond on Sunday to be delivered and filed on Monday; another travels fifty miles to collect money to be deposited in place of an undertaking. The act of neither is against the law or in any manner invalid, unless what is so done on Sunday is judicial business. One accomplishes his object in one way, the other in another. Can it be possible that the first is judicial business while the other is not? We do not think the district attorney would prosecute either for violating the fourth section of the act entitled, "An Act for the better observance of the Lord's day," and yet, if his position is correct, they would both be liable to pay a fine of not less than thirty dollars, nor more than two hundred and fifty dollars, for transacting judicial business on Sunday. It is said by Chief Justice Field, in *Kelly* v. *Van Austin*, 17 Cal.

565, that "the clerk in entering judgments upon default, acts in a mere ministerial capacity. He exercises no judicial functions. The statute authorizes the judgment, and the clerk is only the agent by whom it is written out and placed among the records of the court." He cannot enter the default and judgment on Sunday, because by another portion of section 4, he is prohibited from making any record on that day, but he is not prohibited because it is judicial business. If entering a default and judgment is purely a ministerial act, for the reasons stated, it certainly must be true that even the filing of the undertaking by the clerk is such an act, because he is not authorized to exercise any judicial functions, his only duty being to file such an one as is presented, and "to place it among the records of the court." (See *Johnston* v. *People*, 31 Ill. 473; *Johnson* v. *Day*, 17 Pick. 109; *Hilton* v. *Houghton*, 35 Me. 144; *Goss* v. *Whitney*, 24 Vt. 187; *Lovejoy* v. *Whipple*, 18 Vt. 379; *Clough* v. *Shepherd*, 31 N. H. 494; *Fox* v. *Hills*, 1 Conn. 308; *People* v. *Bush*, 40 Cal. 346.)

The same reasoning and authorities apply to the acts of the notary. They were not prohibited because they were purely ministerial (*Betts* v. *Dimon*, 3 Conn. 108); nor was the notary required to make a record of the act of administering the oath to the sureties. (Sections 336–337–338, vol. 1, C. L.)

The motion to dismiss the appeal is denied.

Counsel for appellant claims that the judgment is erroneous for two reasons: First. It is urged that the action was prematurely brought; that by section 3254 C. L., the collection of taxes on the proceeds of mines must be enforced in the same manner as taxes upon other personal property; that no suit can be commenced for other delinquent taxes before the last day of November next succeeding the assessment of the property taxed; that section 3254 is a complete substitute for all previous provisions for the enforcement of the collection of taxes on the proceeds of mines; that the word "manner" in the section of the statute referred to, includes "time," and consequently that the tax upon the proceeds of mines cannot be collected

quarterly.     Second.     That the court erred in rendering judgment for the ten per centum penalty, for the reason that the statute does not authorize it in actions for delinquent taxes upon the proceeds of mines.

The first objection was raised in *The State* v. *Eureka Consolidated Mining Company*, 8 Nev. 29, and there decided adversely to appellants' construction. We are satisfied with the opinion rendered in that case upon this question. The provisions of the statute requiring the collection of taxes in this class of cases to be enforced "in the same *manner* in which the tax on any other kind of personal property is enforced and collected," does not by any means necessarily suggest the conclusion that suits for their collection must be brought at the same time.

There are many sections in the statute which convince us that the legislature did not intend to have section 3254 convey the meaning given by counsel for appellants. The statute of 1871 itself requires the assessment to be made quarterly, and makes each assessment and tax separate and independent. It provides that the tax for each quarter shall be a lien upon the mine from which the proceeds taxed were taken, and that such lien shall attach on the first days of January, April, July and October of each year. If the legislature intended to have the tax collected annually instead of quarterly, no good reason can be given for the enactment of sections 3246 and 3250 of the act of 1871. Those sections are consistent and proper, however, if it was intended that there should be a quarterly collection. We do not think the statute of 1871 was intended to supersede or repeal former statutes in relation to the assessment and collection of taxes upon the proceeds of mines, except so far as the former acts were inconsistent with the provisions of that act. Indeed, such is the expressed intention of the legislature. Suppose the law provided that actions should be commenced in district courts on Mondays, Tuesdays and Wednesdays of each week, and in justices' courts on Thursdays, Fridays and Saturdays only; that in district courts summons should be issued and served, judgment entered, execution issued and enforced in a certain way and by

certain means stated; that in justices' courts the collection of demands sued on "should be enforced in the same *manner* in which collection is enforced in the district courts." In such case we judge it would not be claimed that actions in justices' courts should be commenced on the first three days mentioned, and that they could not be brought on the last three, because such a construction would be unnecessary, and would be against the evident intention of the legislature. Before the passage of the act of 1871 the collection of taxes upon the proceeds of mines was enforced substantially in the same manner in which taxes on personal property was enforced; so they have been and may be, since the passage of that law.

The second objection presented by counsel for appellants involves a question both interesting and important in this state. Under the laws of the state, was the court below justified in rendering judgment for the ten per cent. penalty in this action for the collection of taxes upon the proceeds of mines? It is our duty to construe the statutes bearing upon this question according to the real intention of the legislature, but such intention must be gathered from a fair construction of the several acts themselves. The language used and the object to be attained must be considered. If the language is capable of two constructions, one of which is consistent and the other is inconsistent with the evident object of the legislature in passing the laws, that construction must be adopted which harmonizes with the intention. But we cannot ascertain the intention by our own standard of what would have been proper or consistent in the premises. We cannot conclude that the legislature did impose the ten per cent. penalty unless we find it in the law, whatever may be our personal ideas upon the propriety or consistency of its imposition in one class of cases and not in another; and where the language used is susceptible of but one natural, honest construction, that alone can be given. These principles are elementary. (Sedgwick on the Construction of Stat. and Const. Law, 190 *et seq.*)

The provisions of the statute requiring payment of an additional per cent. of the tax in case of delinquency, is

penal in its nature and object. Of such statutes in *United States* v. *Morris*, 14 Peters, 475, the supreme court of the United States says: "In expounding a penal statute, the court will certainly not extend it beyond the plain meaning of its words; for it has been long and well settled that such statutes must be construed strictly. Yet, the evident intention of the legislature ought not to be defeated by a forced and overstrict construction." To the same effect says Mr. Justice Story in *The Schooner Nymph*, 1 Sumner, 516–518.

We do not understand counsel for respondent seriously to claim that the ten per cent. penalty, prior to the statute of 1873 (C. L. 3238), was required to be paid in actions to enforce payment of taxes on the proceeds of mines; but it is urged that the payment of such penalty is required by the last statute. The title of this act is "An act prescribing an additional penalty for non-payment of taxes in certain cases after suit." The act itself is as follows:

"In all suits for the collection of delinquent taxes, originally brought in the district courts, where the amount exceeds three hundred dollars, the complaint and summons shall demand, and the judgment shall be entered, for twenty-five per centum, in addition to the tax, and ten per centum thereon and costs, provided in the act to provide revenue for the support of the government of the state of Nevada and the acts amendatory thereof; and such tax, penalty and costs shall not be discharged, nor shall the judgment therefor be satisfied except by the payment of the tax, original penalty, costs, and the additional penalty herein prescribed in full."

We think this statute is fairly susceptible of but one construction; and that is, that in all suits originally brought in district courts for the collection of delinquent taxes, where the amount of the tax exceeds three hundred dollars, twenty-five per centum of the tax shall be entered as a judgment in addition to the tax and costs; and if in any case, the revenue laws enacted prior to the statute quoted, provide for the ten per centum penalty in that case, then such penalty shall also be entered, in addition to the twenty-five per cent. penalty; but that if in any case where

suit is brought in a district court for taxes exceeding three hundred dollars, the former revenue laws do not provide for the ten per centum penalty, then in such case, it cannot be given under the statute of 1873. To be plain, our opinion is, that prior to this statute, the revenue laws of the state did not require the ten per centum penalty in actions for the collection of delinquent taxes upon the proceeds of mines, and that in such cases, under the statute of 1873, judgment can be rendered only for the tax, the twenty-five per centum penalty prescribed therein, and costs. Let us examine the statute. In the first place, the seventeenth section of article iv. of the constitution provides, that " each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title." The title to the statute now under consideration is as before stated. It is " An act prescribing an additional penalty "—that is, a penalty in addition to a penalty already prescribed. Then, so far as the title indicates the intention of the legislature, it was to prescribe a penalty in addition to one provided before that statute was passed.

The law itself does require, in terms, that a judgment be entered for a penalty of twenty-five per centum of the tax; but as to the ten per centum of the same, there is no such requirement, except in cases where such per centum was provided in the former statutes to provide revenue. What the legislature plainly intended to do was to require, in the cases mentioned, a more stringent penalty for non-payment of taxes than was then provided. Where the tax exceeded three hundred dollars they meant to create an additional incentive to prompt payment. The several members of the legislature, in common with other citizens, may have thought the ten per centum penalty was imposed in this class of cases, and they may have passed the statute of 1873 under such impression, but a bare recital of their construction of the meaning of former laws in the statute in question certainly did not impose the disputed penalty. (*Bingham* v. *Board of Supervisors*, 8 Minn. 448.) This statute provides that "such tax, penalty and costs shall not be discharged,

nor shall the judgment therefor be satisfied, except by the payment of the tax, original penalty, costs, and the additional penalty herein prescribed, in full." That is to say, the judgment may be satisfied by payment of the penalty then before prescribed, and the penalty therein prescribed, the tax and costs, and not otherwise. But if in any case there is no original penalty, and the only penalty prescribed by that law is the additional penalty of twenty-five per centum, then the only matters to be satisfied are the tax, the twenty-five per centum penalty and the costs. The "original penalty" referred to is that prescribed by the revenue law of 1865 and the amendments thereto, for there was no other to which it could refer. If the legislature intended by the statute of 1873 to impose a penalty of thirty-five per centum of the tax on the proceeds of mines, where the amount exceeds three hundred dollars, it should have so declared. If it did not intend or wish to impose but twenty-five per centum penalty in such cases, the intended result was accomplished. If it was of the impression that the ten per centum was already imposed in such cases, it was mistaken, and the result is that only twenty-five per centum can be collected.

Suppose a law should be passed by the next legislature prohibiting the sale of intoxicating liquors, prescribing a penalty of one hundred dollars "in addition to the fine of fifty dollars now provided by law for the same offense by the act concerning crimes and punishments," and authorizing a judgment to be entered accordingly. In case of violation, would it be claimed that the fine of fifty dollars, supposed to have been imposed by a prior legislature, could be collected without establishing the fact of its imposition by a law previously enacted? In such case, if an examination of the statutes should reveal the fact that there had been no prior legislation imposing a penalty for such an offense, the conclusion would necessarily be that the legislature was mistaken in fact, and the penalty would be limited to one hundred dollars. Giving the language of the statute of 1873, under consideration, its natural, and to our minds, its only proper meaning, we are entirely satisfied that the

ten per centum penalty claimed in this case could not be included in the judgment against defendants, unless authority therefor can be found in prior statutes. The only sections of other and former laws wherein mention is made of a penalty in tax suits, are 3148, 3154 and 3155 (C. L.) Those sections do not relate to the taxation of the proceeds of mines, but of real and personal property, as defined in sections 3128 and 3129. In the last section personal property, for the purposes of taxation, is defined and specified, and at the last of the section it is provided "that gold and silver-bearing ores, quartz or minerals from which gold or silver is extracted, when in the hands of the producers thereof, shall not mean, nor be taken to mean, nor be listed and assessed under the term 'personal property,' as used in this section of this act, but is specially excepted therefrom, and shall be listed, assessed and taxed as hereinafter provided."

Such provision was made in the act of 1865, commencing at section 99. In that and all subsequent statutes relative to assessment and taxation, as well as to the enforcement of payment by action, the proceeds of mines have been and are treated by provisions appertaining to them alone. In those sections there is nothing said in relation to a penalty in cases where taxes become delinquent. And it would seem that until 1873, the legislature did not intend to impose a penalty in case a tax on the proceeds of mines should become delinquent, for by section 30 of the statute of 1865, and as amended in 1866, and as it still remains, the form of the complaint prescribed requires the district attorney to insert a prayer for ten per centum penalty upon "the tax due on real estate, improvements, and personal property," which does not include the tax upon proceeds of mines, as will be seen by reference to section 5 (C. L. 3129). Then, in section 31 (C. L. 3155), in case of default in actions to enforce payment of taxes upon all property except the proceeds of mines, it is provided that judgment shall be entered "for the amount of taxes, with ten per cent. damages and costs." But turning to the part of the statute which treats of the taxation of the proceeds

of mines and the collection of taxes due thereon, as before stated, there is not the slightest intimation, until 1873, that the legislature intended to prescribe a penalty in case of delinquency. But, on the contrary, there is striking proof that they did not so intend, by the prescribed forms of complaint in actions like this, as well as in actions for the collection of taxes upon real and personal property. In the latter, the form provides a prayer for ten per cent. damages for non-payment, as required by law, while the former requires nothing but the tax and costs. Then section 129 (C. L. 3233) declares that "so far as they are applicable, and not otherwise expressly provided in this act, the answer to the complaint, the means and manner of serving the papers, * * * and in all other matters concerning the collection of delinquent taxes on the proceeds of mines, the laws for the collection of taxes on real estate and personal property, as provided in this act, shall apply to the collection of delinquent taxes on the proceeds of mines." The statute of 1865 was one of the most important laws passed at that or any other session of our legislature, and it bears upon its face evidences of mature deliberation. Under such circumstances it is difficult to arrive at any other conclusion than that the legislature, until 1873, did not intend to require a penalty in cases of this character. If the legislature of 1865 did in fact so intend, it left no evidence of such intention in the statute, and subsequent legislatures, until 1873, in no respect changed the law in this regard.

The court erred in entering judgment for the ten per centum penalty, but we perceive no occasion for a new trial. The judgment may be modified according to the rights of the parties. Plaintiff is entitled to recover judgment for the whole tax, seventy-two thousand eight hundred and fifty-two dollars and three cents; the twenty-five per cent. penalty, eighteen thousand two hundred and thirteen dollars, and four thousand six hundred and fourteen dollars and thirty-nine cents costs, making a total of ninety-five thousand six hundred and seventy-nine dollars and forty-two cents in United States gold coin.

The cause is remanded to the court below with instruc-

tions to modify the judgments herein as follows: By insert-
ing the sum of four thousand five hundred and fifty-three
dollars and twenty-five cents in place of four thousand nine
hundred and fifteen dollars and seventy-six cents, taxed as
costs, and entered as the district attorney's percentage; also,
by inserting the sum of ninety-one thousand and sixty-five
dollars and three cents in place of ninety-eight thousand
three hundred and fifteen dollars and twenty-three cents,
entered as the total amount of the tax and penalties; also,
by inserting the sum of four thousand six hundred and four-
teen dollars and thirty-nine cents in place of four thousand
nine hundred and seventy-six dollars and ninety cents,
entered as the whole amount of costs, including the district
attorney's fee and percentage; and the judgment so modified
is affirmed without costs of appeal.

HAWLEY, C. J., dissenting:

I concur in the conclusions reached by the court, that
this case must be examined and decided upon its merits,
and that the ten per centum penalty imposed by section 24
of the revenue act of 1864–5 (Stat. 1864–5, 282; Stat. 1866,
172), does not, by the terms of said section, for the reasons
stated in the opinion of the court, apply to suits brought
for the collection of delinquent taxes upon the proceeds of
mines. But I entertain a different opinion as to the con-
struction that ought to be given to the act approved March
7, 1873. (Stat. 1873, 169, 170.)

In the first place, it must be conceded that the general
power of taxation is unlimited; that it rests upon necessity;
is inherent in every sovereignty, and essential to the exist-
ence of the government. Every individual must bear his
portion of the public burdens.

The object of imposing penalties is to secure the prompt
payment of the taxes when due, and the imposition of the
penalties prescribed by the statute must, in my judgment,
be sustained upon the same general principles that support
the power of taxation. It seems to me, therefore, that
upon principle, the general rule of strict construction, as
applied to ordinary penal statutes, has no application what-

ever to this case, and I do not understand the court to base its opinion upon this ground.

Statutes imposing penalties for the non-payment of taxes are not, strictly speaking, in derogation of the natural rights of individuals. In the construction of all revenue statutes in relation to the imposition or collection of a tax or penalty, we ought, whenever it can be done without violence to the language used, to so construe the acts as to give effect to the meaning and intention of the legislature, without any reference to strictness upon one side, or favor upon the other. (*Wood* v. *United States*, 16 Peters, 342; *Taylor* v. *United States*, 3 How. 210; *Cliquot's Champagne*, 3 Wal. 144; *United States* v. *Hodson*, 10 Id. 395; *United States* v. *Breed*, 1 Sum. C. C. 160; *Davy* v. *Morgan*, 56 Barb. 222; *Cornwall* v. *Todd*, 38 Conn. 443.) The construction must, as all courts say, seek the real intent of the law-makers. "Courts of justice are bound to give effect to that intent, and are not at liberty to fritter it upon metaphysical niceties." (*The Schooner Nymph*, 1 Sum. C. C. 518.) No interpretation ought to be adopted which would in any manner tend to defeat the object and purpose of the law, if the language used is fairly and honestly susceptible of a construction that will sustain the object which the legislature had in view in passing it. What, then, was the object of the legislature in passing the statute of 1873? This question is very easy of solution. It was, in brief, to compel the prompt payment of taxes, and to prevent delinquencies and delays.

The legislature was evidently of the opinion that the existing penalties imposed in the revenue act were not sufficient to accomplish the desired purpose. It knew that taxes were not only regarded by many people as burdens, but, in the language of the supreme court of Connecticut in the case above cited, "that many look upon them as money arbitrarily and unjustly extorted from them by the government, and, hence, justify themselves and quiet their consciences in resorting to questionable means" for the purpose of avoiding the payment of their taxes, and it determined to oppose this resistance of the taxpayers by the imposition

of a heavy penalty. It would further seem from the language of the act that the failure or refusal to pay the taxes when due came only from the heavy taxpayers, for the penalty is limited to such suits as are "originally brought in the district courts, where the amount" of the tax "exceeds three hundred dollars."

The legislature also knew that the existing penalty of ten per cent. only applied to the collection of delinquent taxes upon real estate and personal property (as distinguished by the express terms of the revenue act from the collection of taxes on the proceeds of mines.) At least, this knowledge ought to be presumed, because each member of the legislature, like every other individual, is *presumed* to know the law.

Now, it seems to me that if the rule of strict construction is to be literally enforced, then the object which the legislature had in view would to some extent be defeated, for it might be argued, with some degree of plausibility at least, that the twenty-five per cent. penalty does not apply to suits brought for the collection of delinquent taxes upon the proceeds of mines; because by a literal and strict interpretation of the language of the act of 1873 it only imposes the twenty-five per cent. as an *additional* penalty to the penalty already imposed upon delinquent taxpayers on real estate and personal property by the "act to provide revenue for the support of the government of the state of Nevada and the acts amendatory thereof," and that it could not be enforced in suits brought for the collection of delinquent taxes against the proceeds of mines, because no *original* penalty was imposed in such cases, and this act only prescribes an *additional*—not an *original*—penalty. And if any effect is to be given to the title of the act as bearing upon the construction of it, then, it seems to me, that this view is strengthened because the title indicates, as the court say, that it was "the intention of the legislature to prescribe a penalty in addition to one provided before that statute was passed," and as no penalty whatever had been provided for against delinquents on the proceeds of mines there could not be any additional penalty against that char-

acter of property. But, as before stated, I do not believe that the rule of strict construction has any application whatever to this case, and, therefore, in examining the act I have endeavored to find the real intention of the legislature, which is the cardinal guide that beacons the pathway of all courts in determining the proper construction to be given to all doubtful statutes, and I have sought to collect this intention from the language of the act itself, viewed with reference to "the occasion and necessity of the law—from the mischief felt and the object and remedy in view." (*Sibley* v. *Smith*, 2 Mich. 492.)

The court, in *Winslow* v. *Kimball* (25 Me. 495), in refusing to give a strictly liberal construction to the statute, said: "But statutes are to receive such a construction as must evidently have been intended by the Legislature. To ascertain this we may look to the object in view, to the remedy intended to be afforded, and to the mischief intended to be remedied." In order to get at the intention of the lawmakers, where the statute is ambiguous or its language uncertain, courts have never hesitated to sacrifice the letter of the statute to the purpose and object of the legislature wherever it could be done without violence to the language of the statute. I am of opinion that in a case like the present, where it is, as I think, plainly perceivable that a particular intention, though not very clearly expressed, must have been in the minds of the legislators, that intention ought to be enforced and made to control the strict letter of the statute. The legislature, in the act of 1873, made no discrimination, as in previous acts, between delinquents on real estate, personal property or the proceeds of mines. It was intended to apply to all. No suit for the collection of delinquent taxes should thereafter be brought in the district court, where the amount exceeded three hundred dollars, without a demand being made for twenty-five per centum in addition to the ten per centum that had been previously imposed only against delinquent taxes on real estate and personal property, but by this act extended and made applicable to all suits of every kind and character that might thereafter be brought for delinquent taxes where the amount

of the tax exceeds three hundred dollars. The limitation—and the only limitation—is in the amount of the tax, not in the character of it.

If the legislature only intended that the twenty-five per cent. should be enforced in cases where, under the revenue acts, the ten per cent. was imposed, why did they not insert after the word "dollars" the words "except in suits brought to recover delinquent taxes on the proceeds of mines?"

If the twenty-five per cent. was only to be enforced in suits brought for delinquent taxes against the proceeds of mines, why should the act provide that no judgment in any suit for delinquent taxes, which necessarily includes the proceeds of mines, should be satisfied except by the payment of the *original penalty* of ten per cent. "and the additional penalty herein prescribed in full?"

It must, as I think, be admitted that the act of 1873, viewed from any standpoint of construction that takes into consideration the previous statute imposing the ten per cent., fails to prescribe in clear and positive terms its exact meaning. But if, in addition thereto, we look at the purpose of the law-makers, their intention is made certain. If it had occurred to the legislature that the ten per cent. was not, by the language used, clearly imposed against the proceeds of mines, I have no doubt that it would have been expressly included so as to prevent any possible misunderstanding of their meaning by any construction whatever.

It is manifest, to my mind, that it was the real intention of the legislature to impose, and that by a reasonable, honest and fair construction of its language, it did impose, the additional and original penalty in " all suits for the collection of delinquent taxes originally brought in the district court, where the amount exceeds three hundred dollars," whether it be for a tax upon real estate, personal property, or the proceeds of mines, and that the tax for which the suit is brought "shall not be discharged," nor the judgment therefor satisfied, "except by the payment of the tax, original penalty" (of ten per cent.), the costs, "and the additional penalty" (of twenty-five per cent).

I think the judgment of the district court was correct and that it ought to be affirmed.